[Civ. Nos. 65073, 64607. Second Dist., Div. One. Feb. 4, 1983.]

EMANUEL M. COMORA, Plaintiff and Appellant, v.
COMPREHENSIVE CARE CORPORATION et al.,
Defendants and Respondents.

COUNSEL

Michael J. Rand for Plaintiff and Appellant.

Pacht, Ross, Warne, Bernhard & Sears and Thomas J. Weiss for Defendants and Respondents.

OPINION

**SPENCER, P. J.—**

### INTRODUCTION

Plaintiff Emanuel M. Comora appeals from a summary judgment granted in favor of defendant Comprehensive Care Corporation and an order granting defendant Wolhi, Inc.'s motion for judgment on special defenses.

## STATEMENT OF FACTS

In 1966, plaintiff perfected security interests in the tangible assets, accounts receivable, and existing and future profits of the Highlanders and Pine Tree convalescent hospitals located in Sylmar, California; pursuant to an agreement with plaintiff, monies due him by virtue of his secured interests were placed in a special trust account. From time to time, plaintiff allowed funds due the trust fund to be used for the purpose of operating the Highlander business.

A petition in involuntary bankruptcy was filed against Highlanders, Inc. and others on June 23, 1966; Highlanders, Inc. was adjudicated bankrupt and a trustee in bankruptcy was appointed on November 7, 1966.

On January 31, 1968, the referee in bankruptcy ordered the receiver to transfer title to the assets to the purchasers, Barbara R. Olsan and San Fernando Medical Center, Inc.; although the bankruptcy order indicated the purchaser was to take the assets subject to certain liens, plaintiff's secured interests were not specified; plaintiff was listed, however, among the creditors whose claims were transferred to the receiver/trustee. In addition, the bankruptcy order transferred all accounts receivable prior to the date of sale to the receiver/trustee; accounts receivable subsequent to the date of sale were purchased by the buyer. Plaintiff was physically present at the bankruptcy sale hearings.

In 1968, the assets were sold to defendant Wolhi, Inc. (Wolhi); in 1969, defendant Comprehensive Care Corporation (Comprehensive) purchased the assets from Wolhi.

In 1980, the Ninth Circuit Court of Appeals ruled that the issue of the bankruptcy adjudication's validity was res judicata. (*Highlanders* v. *Rothman* (9th Cir. Mar. 24, 1980) No. 78-1768 [unpub. opn.].)

Plaintiff initiated this action against defendants Comprehensive and Wolhi for conversion and an accounting after the Second Appellate District, Court of Appeal of the State of California indicated that the issue of the fraudulent initiation of the bankruptcy proceeding was barred by the statute of limitations. (*Comora* v. *Shapiro* (July 14, 1980) 2 Civ. 56630 [unpub. opn.].) The court specified, however, that it was not addressing the viability of an action maintained under the theory of a continuing conversion.

On January 20, 1981, Comprehensive moved for summary judgment upon the ground that plaintiff's claims had previously been adjudicated to be without merit; on June 23, 1981, Wolhi filed a motion for the trial of the special defenses of res judicata and collateral estoppel. Judgment was entered in favor of Comprehensive on April 16, 1981, and in favor of Wolhi on July 16, 1981. Plaintiff appeals from both judgments.

## CONTENTIONS

### I

Plaintiff contends that defendant Comprehensive's failure to include declarations or affidavits in support of its motion for summary judgment requires reversal of the judgment.

### II

Plaintiff further contends that the court erroneously granted defendants' motion for summary judgment and motion for judgment on special defenses on the grounds of res judicata and collateral estoppel in that the status of his security interests has never been litigated.

## DISCUSSION

### I

■ There is no merit to plaintiff's contention that Comprehensive's failure to include declarations or affidavits in support of its motion for summary judgment requires reversal of the judgment.

Plaintiff's failure to recognize any manner of support other than declarations or affidavits is fatal to his argument. We find adequate support for Comprehensive's motion in that the trial court took judicial notice of the decisions of the California Court of Appeal and the Ninth Circuit Court of Appeals.

Section 437c of the Code of Civil Procedure specifies that "matters of which judicial notice may be taken" provide support for a motion for summary judgment.[1] A court is entitled to consider facts which are properly the subject of judicial notice. (*Arauz* v. *Gerhardt* (1977) 68 Cal.App.3d 937, 941 [137 Cal.Rptr. 619].) The decisional law of any state may be judicially noticed. (Evid. Code, § 452.)

### II

■ There is no greater merit to plaintiff's assertion that the court erroneously granted defendants' motion for summary judgment and motion for judgment on special defenses on the grounds of res judicata and collateral estoppel.

---

[1]Code of Civil Procedure, section 437c, provides in pertinent part: "The motion shall be supported or opposed by affidavits, declarations, admissions, answers to interrogatories, depositions, and matters of which judicial notice shall or may be taken."

Plaintiff's assertion that defendants have converted his property by acquiring possession of his collateral is dependent upon a finding that plaintiff's secured interests survived the bankruptcy sale. The validity of the sale has been adjudicated; according to the Ninth Circuit Court of Appeals, that issue is res judicata. (*Highlanders* v. *Rothman* (9th Cir. Mar. 24, 1980) No. 78-1768, p. 4 [unpub. opn.].) Plaintiff contends, however, that the specific issue of the status of his security interests has never been adjudicated. Even if we assume that the contention has merit, plaintiff's cause of action in conversion remains barred.

Plaintiff maintains that the assets were sold "subject to his liens" and that his secured interests survived the sale. The record, however, provides no support for this theory; rather, the terms of the bankruptcy sale, plaintiff's course of dealing with the receiver/trustee, and plaintiff's pleadings convince us that the assets were sold free of his liens.

The validity of the bankruptcy sale is settled; its terms determine the status of plaintiff's liens. Analyzing the terms of that sale, we find no mention of plaintiff's security interest, although he was listed as a creditor whose claims were transferred to the receiver/trustee. Furthermore, the order of sale clearly specified that accounts receivable accruing prior to the sale would be transferred to the receiver/trustee, while those accruing subsequently would accrue to the purchaser. Physical assets transferred to the purchaser were subject to certain liens; however, no liens were in plaintiff's favor. Any other claims which plaintiff might have had against Highlanders were transferred to the receiver/trustee.

The terms of the sale, therefore, which contain both plaintiff's demands as a creditor and as a potential claimant, transfer his various claims to the receiver/trustee. Since plaintiff successfully included those claims among the terms of sale, we may infer either that his secured interests were included in his claims as a creditor or that the assets were purposefully sold free of his secured interest. In either case, the purchasers took free of the liens.

Moreover, since plaintiff was physically present at the hearings pertaining to the sale, he had an opportunity to insure that all sums due him would be repaid. Therefore, we may also infer that the claims he caused to be included in the order of sale included all claims which he believed due him.

Plaintiff relies on *Central Cal. Equip. Co.* v. *Dolk Tractor Co.* (1978) 78 Cal.App.3d 855 [144 Cal.Rptr. 367], for the proposition that the conduct of a secured creditor may not be construed as releasing or waiving a secured interest where the terms of the security agreement preclude modification unless consent to such modification is procured in writing. Although the *Central Cal. Equip. Co.* court did so hold, they noted additionally that an agreement to sell free of a

secured interest might be implied where a prior course of dealing with the debtor permitted disposition.

We find plaintiff's conduct in the instant case implied such an agreement. In addition to plaintiff's actual participation in the sale of the assets, we interpret plaintiff's prior history of authorizing the receiver/trustee's use of monies due the special trust fund as satisfying the secured debt to the extent of those funds which had become due to that fund. Plaintiff's recourse for repayment of those funds, therefore, would be properly sought from the receiver/trustee, not from the purchaser or her successors in interest. The satisfaction of the debt attributable to the trust fund, the inclusion of various claims in favor of plaintiff in the order of sale and plaintiff's physical presence at the sale collectively manifest his agreement to that sale free of any interests other than those specified in the order of sale.

The distinction between the events in the instant case and those cited in *Central Cal. Equip. Co.* further supports our conclusion. There, the secured party was not involved with the sale of the secured property. In the absence of any basis to imply an agreement, the court held that a release of the secured party's interest must be in writing. In the case at bar, however, plaintiff's extensive involvement with the bankruptcy sale satisfies the *Central Cal. Equip. Co.* criteria for an implied agreement. Thus, a writing releasing the plaintiff's interests was unnecessary.

Moreover, plaintiff's theory that the assets were sold subject to his liens was raised for the first time on appeal; the pleadings expressly admit a sale free of plaintiff's liens.[2] The rule is well established that a party will not be permitted to alter his position and adopt a different theory on appeal. (*In re Marriage of Karlin* (1972) 24 Cal.App.3d 25 [101 Cal.Rptr. 240]; *Clark Equipment Co.* v. *Mastelotto, Inc.* (1978) 87 Cal.App.3d 88 [150 Cal.Rptr. 797]; *Signal Hill Aviation Co.* v. *Stroppe* (1979) 96 Cal.App.3d 627 [158 Cal.Rptr. 178].)

Furthermore, we are unconvinced that the admission is simply "one ambiguously pleaded conclusion . . . ."[3] The pleadings in the case at bar include language identical to language contained within the pleadings proffered by plaintiff in *Comora* v. *Shapiro, supra,* 2 Civ. 56630 [unpub. opn.], wherein an admission of a sale free of plaintiff's liens was entirely consistent with plaintiff's cause of action. Thus, plaintiff's intentional admission there convinces us that the admission in the instant pleadings was also intentional and accurately reflects the theory which plaintiff propounded below. The admission supports

---

[2]Paragraph 23(b) of the complaint includes the following: "(4) that the supplies, equipment, etc. of the Highlanders Sanitarium and the physical assets of Pine Tree were to be sold to the offerors, free of liens, . . . ."

[3]Appellant's opening brief, page 23.

our conclusion: The assets sold pursuant to the bankruptcy sale were sold free of plaintiff's security interests. In order to foreclose further meritless litigation, we take judicial notice of that fact.

Barbara Olsan and the San Fernando Medical Center, Inc. purchased the assets free of liens; therefore, defendants Wolhi and Comprehensive acquired those assets free of liens. Hence, possession of the contested assets does not establish conversion of plaintiff's property.

Because the issue of the validity of the bankruptcy sale is res judicata, the issue of the disposition of assets pursuant to that sale is res judicata; because the status of plaintiff's liens is determined by the validity of the bankruptcy sale, the issue of the status of those liens is also res judicata. Defendants' motion for summary judgment and motion for judgment of special defenses were therefore properly granted on the grounds of res judicata and collateral estoppel.

### III

■ Defendant contends that sanctions should be imposed upon plaintiff pursuant to California Rules of Court, rule 26(a)[4] and section 907 of the Code of Civil Procedure[5] for bringing a frivolous appeal. In the recent case of *In re Marriage of Flaherty* (1982) 31 Cal.3d 637 [183 Cal.Rptr. 508, 646 P.2d 179], the California Supreme Court noted that subjective and objective standards may be used simultaneously when determining whether an appeal is frivolous. The subjective view looks to appellant's motives; i.e., whether the appeal was brought in good faith or merely for the sake of delay. The objective standard, on the other hand, applies the reasonable person standard; if "any reasonable person would agree that the point is totally and completely devoid of merit," the appeal is frivolous. (*Id.*, p. 649.)

In accord with the *Flaherty* guidelines, we find the instant appeal wholly without merit in that: (1) the appeal was not brought in good faith, but was brought only to harass defendants Comprehensive and Wolhi; (2) plaintiff was well aware, as any reasonable person would have been, that all issues involving the validity of the bankruptcy sale were res judicata and that the

---

[4]Rule 26(a), California Rules of Court, provides in pertinent part: "Where the appeal is frivolous or taken solely for the purpose of delay . . . , or [where any party] has been guilty of any other unreasonable infraction of the rules governing appeals, the reviewing court may impose . . . penalties, including the withholding or imposing of costs, as the circumstance of the case and the discouragement of like conduct in the future may require."

[5]Section 907 of the Code of Civil Procedure provides: "When it appears to the reviewing court that the appeal was frivolous or taken solely for delay, it may add to the costs on appeal such damages as may be just."

status of "his" purported assets was determined by the order of sale; (3) plaintiff was also aware that matters of which judicial notice may be taken adequately support a motion for summary judgment; and finally, (4) plaintiff distorted the plain meaning of his pleadings in order to raise on appeal that which was not raised below; i.e., a sale *subject* to his liens.

This appeal was apparently taken for the purpose of harassment. During the 14 years between the bankruptcy sale and the present appeal, plaintiff initiated a lengthy series of groundless litigation during which the instant issues were or could have been raised.

By 1977, Comora had brought four separate appeals; in November of that year, the court stated "[t]hese appeals are among the worst cases of frivolity witnessed by this court," then imposed sanctions of $3,500. (*Comora* v. *Olsan* (Nov. 9, 1977) 2 Civ. 50061 [unpub. opn.].)

In 1978, when Comora appealed from a nonappealable order, the court noted that the appeal had been "taken without substantial justification for the purpose of vexing and harassing the opposing parties." (*Highlanders* v. *Olsan* (Oct. 30, 1978) 2 Civ. 54636 [unpub. opn.].)

Sanctions totaling $5,500 were imposed in 1979 as a result of two appeals taken that year. (*Highlanders, Inc.* v. *San Fernando Medical Center, Inc.* (Feb. 9, 1979) 2 Civ. 54589 [unpub. opn.]; *Highlanders, Inc.* v. *Olsan* (June 18, 1979) 2 Civ. 54330 [unpub. opn.].) In *Highlanders, Inc.* v. *Olsan* (*ibid.*), plaintiff appealed from an order of dismissal entered when the trial court found an absence of triable issues; Comora was penalized $5,000 plus the costs of appeal. The court noted that none of plaintiff's previous appeals were meritorious and stated, "Comora's continued abuse of our limited and overburdened judicial processes to thwart the doing of justice must cease."

In 1980, the Ninth Circuit Court of Appeals consolidated seven causes of action in *Highlanders* v. *Rothman et al., et alia* (9th Cir. Mar. 24, 1980) Nos. 78-2810, 78-2811, 78-2812, 79-3024, 79-3033, 79-3157 and 78-1767, memo. opn.); again, sanctions were imposed. There, the court noted that the issue of the validity of the bankruptcy sale was barred by res judicata; the court stated, "[n]one of these appeals raises any substantive issues. They are, however, consistent with plaintiff's decade-long career of frivolous litigation in the federal and California state courts which has no object but to delay the final settlement of the bankruptcy estate." Plaintiff was required to pay defendant's reasonable attorney's fees and was fined twice the amount of costs incurred in the consolidated appeals.

The California Court of Appeal imposed sanctions again in 1980 when Comora challenged the validity of the bankruptcy proceedings. (*Comora* v. *Shapiro, supra,* 2 Civ. 56630 [unpub. opn.].) In addition to the normal costs of appeal, plaintiff was fined $500. Noting that the complaint contained allegations which had been presented in proceedings begun in 1971, the court stated "[t]he appeal is patently frivolous."

In appearances before California and federal courts, plaintiff has subjected defendants Wolhi and Comprehensive to a series of lawsuits totally devoid of merit. The instant appeal fares no better in our eyes; along with the aforementioned frivolous claims, this appeal has contributed substantially to the overcrowding of court calendars. Since it is totally devoid of arguable merit, we must exercise the powers conferred by section 907 of the Code of Civil Procedure and rule 26(a) of the California Rules of Court and impose sanctions in order to discourage Comora from further frivolous litigation.

The judgments of the trial court are affirmed and a sanction in the sum of $10,000 in attorney fees, payable to defendants, is assessed against plaintiff, in addition to costs on appeal.

Lillie, J., and Hanson (Thaxton), J., concurred.

A petition for a rehearing was denied March 4, 1983, and appellant's petition for a hearing by the Supreme Court was denied April 20, 1983.